Good morning, your honors. Andrew Dyckis, steward on behalf of defendants appellant San Szabla. Just to provide some background, this is an insurance fraud case. My client operated a small furniture company and his warehouse got fired and he had a type of insurance called business interruption insurance, which pays the insured for any loss of businesses brought on by things such as a fire. And in that process, the insurance company had asked my client to provide the sales from the previous year in order to estimate how much he would faxed over figures to the insurance company. The insurance company calculated the loss and paid the company. And then the government, several months later, did an investigation and came back and basically said, well, we've looked at your bank deposits for September to December 1999 and they're much less than figures, sales figures you submitted to the government for the same period. And on that basis, they indicted my client for fraud. So it went to trial. The case proceeded to trial. Yes, it did. All right. So as I understand your appeal and what you're challenging is the district court's exclusion or ruling on relevance of certain testimony of your expert and redacting certain information from various reports. Right. It's a pretty narrow issue, but a very important issue. Well, I'm trying to get the district court may not. I mean, you argued that his relevancy ruling was was not correct. I don't want to speak for any other member of the panel, but it probably was the information you were seeking to present was probably relevant. I mean, relevancy has a pretty broad definition. Right. And I don't think the prosecution's even argued in its opposition memo that it wasn't relevant. It was definitely relevant. Maybe so. So how was it? So how was the exclusion of that evidence harmful? Sure. Well, that's what the whole case turns on, right? Yes. The threshold question for determining whether it was harmful is whether exclusion of this evidence constitute a constitutional violation or not. And that's a key question because that depends on whether we apply the harmless beyond a reasonable doubt standard or the less more probable or not error. And the problem is not that there was harmless. And based on the Sixth Amendment and the 14th Amendment due process. I understand all that. Why don't you tell me why it was harmful? Sure. Well, my client's defense was threefold. It's sort of like that tripod in front of you. One of the arguments was that, well, when the government's expert examined the bank deposits, she didn't look at January deposits, deposits in transit theory. Second, she didn't consider cash transactions. This is a furniture business. A lot of cash comes in, cash goes out. They use it for CODs to pay certain things. And the other basis was that there were gift certificates and special orders where sales are made, but money doesn't actually come in for several months. And therefore, those three things explain the discrepancy between the bank deposits and the alleged sales. I mean, the sales of a company will never be 100 percent the same as the bank deposits. Now, as I read the expert's testimony, he went through all of that. Right. He went through that. He did, but he was never allowed to submit how much the January bank deposits were in whole or in part. You know, the part that he attributed to the deposits in transit, he was able to get it out. But then there was an objection from the government and the judge sustained it right there. The 60,000. Right. And so the judge struck the witness's testimony regarding the 60,000 January bank deposits. That's my understanding. If we look at an excerpt from the record, that's 79. Okay. But the amount that was in dispute for January was significant or overall for December, I guess it was, was significantly more than the 60,000, if I remember correctly. So why did that make a difference here? Well, I think the overall amount of discrepancy was about 300,000. The deposits in transit was about 60,000. So I guess it's less than one third, maybe 20 percent. Yeah. So what it's still not negligible. And if it was a constitutional violation, I don't think it passes the test of, you know, harmless beyond a reasonable doubt. Also, an important point is we didn't have the opportunity to cross-examine the government expert regarding the January deposits. And I think if the jury heard that the government expert didn't even look at the January deposits, it seriously couldn't question the jury's mind whether or not the government's accountant did a fair job in analyzing. Counselor, let me ask you a question. You admit the jury heard the testimony about these transit deposits, correct? As a general theory, yes. And you admit that, so therefore, they had in front of them that there were some deposits which could be in transit. The only thing that wasn't admitted was $60,000 is the exact amount from correct? Well, I guess if we'd argue that it's not just $60,000 that was important. It's the entire, I think it was $200,000. If we look at Exhibit M, Schedule M, the entire deposit in January was $256,000, which was significantly larger than the pre-December deposits. And I think the jury should have been able to make its own decision. Well, that would be a distortion, wouldn't it? I mean, that would be misleading to suggest that the entire $246,000. Oh, no. No, we wouldn't be saying that the entire $256,000 would be attributable to December. But it would show the jury that the January deposits, it wasn't a normal month. There was no, I mean, December obviously is a holiday season. That's why the deposits jumped up. But January is also significantly higher compared to, say, September, October, November. Well, if in fact December is understated because of January, then September is also overstated because of August. Maybe to a lesser degree. You didn't cry about that, did you, to the district court? No. So we have, on one hand, we have, no, you say we have an understatement in January, but on the same theory one could argue about August. And that is a more likely than not that the jury would have found him not guilty standard. I mean, the standard of review is that I've got to find one. I've either got to find more likely than not to affect the jury, affect the verdict, or harmless beyond a reasonable doubt. So I'm saying they presented the evidence that there is continuing deposits which come in in other months. There's no problem. We allowed deposits to come in in September and we considered that we're probably out of August. And therefore we're arguing about what there might be in January. And we're suggesting that based on that particular situation, it's more likely than not the jury would have found him not guilty. Okay, well. Isn't that your argument? I'm arguing that the prosecution has the burden to prove that it was harmless beyond a reasonable doubt. I understand the September argument, but December is a significant, it's a unique. What I don't understand is this. There was, as you explain it, that there was, the objection was sustained as to the January deposit. Yes. Then the court said the figures are relevant to the extent they provide context. And so your counterpart said, point well taken. And so he says to the witness, so let's talk about the context. Sure. Maybe I can try to frame a question appropriately for you. Tell us what you mean by deposits in transit. And then the witness goes on and says customers come into the store in December and they give the store cash. And it's December 31st and people are going home early. So the deposit for December, the sales deposits on that schedule would not include this money. So if somebody is just looking at bank deposits, there's a schedule on the screen, and they don't look at January, they're really misrepresenting. So isn't that getting the gist of what you're trying to argue? Sure. This is a theory, but in terms of the $60,000, the court definitely ruled that it was striking that testimony. I understand. It didn't instruct the jury to, that he was, you know, reversing it. I understand, but the question is what difference does it make that the $60,000 wasn't before the jury if the whole problem was over $300,000, if that figure wasn't before the jury? Because if the jury added the $60,000 plus other cash transactions, plus, you know, sales that are made through special orders and gift certificates, when they took that as a whole, it could have pushed the jury over the edge and created reasonable doubt. It may not have gone up to $300,000, but it may have come close, and it may have been enough to create reasonable doubt. Okay. And then if I could just show you Exhibit M that's redacted, which is Exhibit Record 216, and compared to 215, I mean, it's just, the jury was shown Schedule M at 216, and it's all blacked out, the January deposits, and I think that is extremely prejudicial. Okay. So even if that $60,000 was mentioned on the stand, when the jury went back into the deliberation room, they never saw that number again. They only heard it once, then they heard the judge strike it, and they had instructions not to consider any evidence stricken by the judge. So the counsel did tell the jury that $60,000 may have been in transit. I'm sorry. Well, at the point where we're arguing about this particular thing, there was evidence that deposits were made on a daily basis, and because that particular situation was before the court, defense counsel said, point well taken, Your Honor, because that's what the judge was saying. The evidence is already that deposits were made on a daily basis. And then it says point well taken in the record. And then the next part is that the jury was given the idea that $60,000 may have been in transit. That's in the record. Which is stricken. I don't think it was stricken. Well, could you show me where I was looking? I was looking at the testimony of the expert witness, and I think according to the excerpts of record, page 82, down at the bottom, lines 14 through about 24. I see, okay. It got slipped in there. There's a $60,000 deposit in transit. But there was already, two pages ago, there was already a ruling striking that number. But I don't see where the judge, well, he sustained an objection, I guess. Right. But he didn't tell the jury, you know, he can't get to any level of testimony here. Well, but the jury instructions that they're given after the trial specifically talk about disregarding evidence that the judge, you know. Okay. Let me ask one additional question. What's blacked out, were those for January, were those the total deposits, or what, that line that's blacked out? If you look at the previous exhibit, it has the underreacted. It's per bank account, and then there's a total deposit. Right. So that would have been misleading. Well, I don't know if it would be misleading, Your Honor, just because that number is so much larger than the previous month to December that it really shows that, you know, there was some kind of something going on in January that wasn't normal. And that $60,000 that the expert attributes, I mean, somebody else looking at it, comparing these figures, may think the deposit in transit was larger or less. I mean, the jury does have the right to make its own determination. Okay. Thank you. We have more than you, sir. Okay. We don't want to address the standard in terms of the constitutional violation issue. I don't think we got there, but I think that's crucial. Well, frankly, I think she said you used your time. Okay. We understand the standard. I don't think anybody has any further questions. Thank you. Thank you. Thank you. May it please the Court, Les Osborne from the District of Hawaii.  I think if you look at page 82 of the excerpt of record, there is no doubt that the $60,000 figure was clearly before the jury. When the witness, the defendant's witness, said that, of course, there's a $60,000 deposit in transit, it's clear that that evidence, despite the government's objection, came in before the jury. We are talking here about an approximately $397,000 fraud. The only issue raised is whether or not there was an improper exclusion of the $60,000 figure. Well, the record, which would have been a $330,000 fraud, which still would have resulted in a conviction. We just heard your adversary argue that the $60,000 may have been, at least I understood him to say that the $60,000 figure may have been before the jury, but what he wanted to do was argue that it could have been more because January was still out of whack with all the other months. What's your response to that? Well, first, I think there's absolutely no evidence of that, and it clearly is outside of the record. And the context of this case is that Mr. Oshiro, the gentleman who was trying to determine the business interruption loss, was looking at the months from June through December. He was not interested in January. And the documents provided by the defendant at Mr. Oshiro's request for June through December were fraudulent. Period. End of story. There was no doubt about that. Tax returns supposedly filed with the state of Hawaii had never been filed. And one tax return that was filed, the August return, was different than the tax return shown to Mr. Oshiro. So the very basis of the fraud here is not what was made or earned in January. It's what the defendant presented to the insurance company to justify his loss. And there was no doubt that everything he provided to the insurance company was fraudulent. And this whole concept of deposits in transit ignores all of the evidence which suggests the deposits were made each and every day from each and every store. And the government witness who did testify about these so-called deposits in transit said these aren't deposits in transit, except to the extent they show a transfer from a store account to a payroll account. They are in no way additional sales. And the facts of the case are, in closing argument, counsel for the defendant abandoned totally this closing argument theory, never talked about the $60,000, in fact, tried to lay the blame at the feet of a co-employee, someone who worked for the defendant. So I think... So I think that the answer to the question of your response to his argument that he would want to argue that it was more than $60,000 and it might be the entire fraudulent amount that was submitted, that that's exactly what the district judge didn't want to come in, didn't want to be, thought was an improper argument. Yes, yes. But, Your Honor, we know what the bank deposits were. That was in evidence. And the only argument of any kind... You knew what the actual bank deposits were. Right. Yes, Your Honor. Yes. Yes, Your Honor. We knew the dollar and cents of the actual deposits. We knew the documents were fraudulent because they had never been filed. We knew that the sales information was fraudulent because it was to the penny the same as the tax documents. And we also learned that the defendant reported his retail sales to his landlords as being substantially under the amount of money he said had been interrupted because of the fire. So the evidence here was overwhelming, and the standard the government argues is clearly whether or not it's more probable than not that there was an effect on the verdict. This is not a due process violation. It was no Sixth Amendment violation. It was the defendant's own witness. Thank you. Thank you. We have about maybe two minutes. I think that we understand where you are. I just wanted to address some of the points. Two minutes is all I have. Okay. With respect to the argument that one of the employees said the money was deposited every day, that was Mrs. Rosas, and in her testimony she said she worked at the store from March 1999 for four or five months. She wasn't there in December 1999. Is there any evidence that the practice changed? No, but she doesn't have personal knowledge of what the practice was. Also, with respect to the closing argument, we didn't talk about deposits and transfers in the closing argument because we couldn't get the number in, so we basically had to change our trial strategy and focus on the impeachment testimony of Ms. Mason. Also, in terms of the government's argument, there's overwhelming evidence. My client's signature doesn't appear anywhere on those tax returns. We understand what you're arguing. There's a big discrepancy between the grand jury testimony and her trial testimony. We do understand that. I just want to make that point. Thank you. The case just argued is submitted for decision. We'll hear the next case, Armstrong v. CNMI.
judges: Schroeder, Paez, Smith